UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:07-CR-184-ERW |
| | ) |
| SAMMY JEFFERSON, | ) |
| | ) |
| Defendant. | ) |


SENTENCING HEARING


BEFORE THE HONORABLE E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE


JANUARY 17, 2008


**APPEARANCES:**

For Plaintiff:     Dean R. Hoag, AUSA
                   **OFFICE OF U.S. ATTORNEY**
                   111 South Tenth Street, 20th Floor
                   St. Louis, MO  63102


For Defendant:     Bryan S. Johnson, Esq.
                   **JOHNSON LAW OFFICES, L.L.C.**
                   201 N. Kingshighway
                   St. Charles, MO  63301


*REPORTED BY:*      *Gayle D. Madden, CSR, RDR, CRR*
                    *Official Court Reporter*
                    *United States District Court*
                    *111 South Tenth Street, Third Floor*
                    *St. Louis, MO  63102*
                    *(314) 244-7987*

2

1    (Proceedings started at 9:05 a.m.)

2    (The following proceedings were held in open court and

3   with the Defendant present.)

4        THE COURT:  Morning.  The case is United States of

5   America versus Sammy Jefferson, S1-4:07-CR-00184-ERW.

6        Is the Government ready, Mr. Hoag?

7        MR. HOAG:  We are, Your Honor.

8        THE COURT:  Is Defendant ready, Mr. Johnson?

9        MR. JOHNSON:  Yes, sir, Your Honor.

10        THE COURT:  Very well.  There are a number of

11   objections to the Presentence Report, and I'll consider those

12   first.

13        MR. JOHNSON:  Thank you, Your Honor.  Your Honor, we

14   made several objections to the Presentence Report, some of

15   which have been changed in the Presentence Report, the final

16   copy having been amended.

17        THE COURT:  All right.  Very well.

18        MR. JOHNSON:  So I would move the Court to

19   respectfully deem as moot our objections to paragraphs 28 --

20        THE COURT:  What are the -- on the numbered pages

21   that I have, which would that be?  Would that be the first

22   one?

23        MR. JOHNSON:  Okay, Your Honor.  Yes, Your Honor.  In

24   the Defendant's objections to the Presentence Report, that

25   would be page 1, paragraph 1.

3

1          THE COURT:  Okay.  It's moot.  Okay.

2          MR. JOHNSON:  Number two, Your Honor, page 4,

3     paragraph 30.

4          THE COURT:  Yes.

5          MR. HOAG:  Could we specifically say which ones those

6     are because I don't have what you have in front of me?

7          MR. JOHNSON:  Sure, sure.

8          THE COURT:  Okay.  Sure.

9          MR. HOAG:  Paragraphs 28 and 30 are the first two?

10         THE COURT:  The first one is page 4, paragraph 28,

11    Defendant objects to the characterization that he personally

12    received cocaine from Codefendant Issachard Lopez,

13    additionally, that Defendant personally received large

14    quantities of cocaine from a source of supply operating out of

15    Mexico.  That one is declared moot.

16         MR. HOAG:  Yeah.  Next one?

17         THE COURT:  And the second one is page 4, paragraph

18    30.  So rather than me reading that, do you have the --

19         MR. HOAG:  I've got it.

20         THE COURT:  All right.  Very well.  That one is also

21    moot, Mr. Johnson?

22         MR. JOHNSON:  Yes, Your Honor.

23         THE COURT:  All right.

24         MR. JOHNSON:  As amended in the final copy of the

25    Presentence Report.

4

1          THE COURT:  All right.  Next one is page 5, paragraph

2  34.

3          MR. JOHNSON:  Yes, Your Honor.  That portion has also

4  been amended as reflected in the final copy of the Presentence

5  Report.

6          THE COURT:  Very well.  Next is page 6, paragraph 41.

7          MR. JOHNSON:  Your Honor, that objection still

8  remains.

9          THE COURT:  Okay.

10          MR. HOAG:  Which one is that?  Paragraph 41?

11          THE COURT:  It's Defendant objects that he possessed

12  a firearm in connection with the above-noted offense.

13          MR. HOAG:  Well, my answer to that, Judge, is he

14  stipulated to it in the Plea Agreement.  I don't know how he

15  can object to it.

16          THE COURT:  Okay.  Well, let's go through it and

17  decide which ones are still to be argued, and then we'll come

18  back to it.

19          MR. JOHNSON:  There's page 8, paragraph 60 still

20  remains as an objection, too, Your Honor --

21          THE COURT:  Okay.  All right.

22          MR. JOHNSON:  -- regarding his conviction for illegal

23  possession of cocaine base and illegal possession of

24  marijuana.

25          THE COURT:  All right.

5

1          MR. JOHNSON:  The next paragraph, Your Honor, page 9,

2   paragraph 69, the Defendant remains objecting to the fact that

3   he was convicted of general peace disturbance in the City of

4   St. Louis.

5          THE COURT:  All right.

6          MR. JOHNSON:  The next paragraph, an objection still

7   remains for assaulting a person.

8          THE COURT:  All right.

9          MR. JOHNSON:  The next paragraph, page 10, paragraph

10  82, Your Honor, those objections, I guess, are related to the

11  fact that if one or any of the above objections to the

12  criminal convictions -- if they are to be sustained by the

13  Court, then it will subsequently change the criminal history

14  score and subsequently change the criminal history category,

15  so those objections are all in relation -- page 10, paragraph

16  82; page 11, paragraph 85.

17         Page 11 is the next objection; the Defendant also

18  objects that he's currently wanted by the St. Louis Police

19  Department.

20         THE COURT:  All right.

21         MR. JOHNSON:  The Defendant objects to page 11,

22  paragraph 89, as indicated in paragraph 11, indicating he's a

23  member of a street gang.

24         THE COURT:  All right.

25         MR. JOHNSON:  Your Honor, page 13, paragraph 105, has

6

1    been amended as indicated in the final copy of the Presentence

2    Report, so we deem that objection moot at this time.

3            THE COURT:  All right.

4            MR. JOHNSON:  And those are all our objections to the

5    Presentence Report, Your Honor.

6            THE COURT:  All right.  So the first one we'll be

7    addressing will be paragraph 41; Defendant objects that he

8    possessed a firearm in connection with the above-noted

9    offense.

10           MR. JOHNSON:  I'll also indicate, Your Honor, for the

11   record, that prior to me filing formal objections, the

12   Defendant objected informally to the Court to each of the

13   above-noted paragraphs that we've already discussed, and so

14   his objections are encompassed within the objections that are

15   before this Court currently.

16           THE COURT:  All right.  Very well.

17           MR. JOHNSON:  With the addition of the fact that I

18   objected to the particular sections of the criminal history

19   category and score correlations.

20           THE COURT:  All right.  Okay.  Mr. Hoag, you began to

21   speak to that first objection, and that was --

22           MR. HOAG:  Paragraph 41?

23           THE COURT:  Correct.

24           MR. HOAG:  As I indicated, in the Plea Agreement and

25   stipulation, he stipulated to that, Your Honor.  I don't know

7

1    how he can make an objection when he stipulated and signed the

2    stipulation and pled in open court.

3            THE COURT:  All right.  Let me see a copy of the Plea

4    Agreement.  Can you pull up a copy for me, Mr. Douglas?

5            That will take a little while, so let's go on to the

6    next one.  Paragraph 60.

7            MR. HOAG:  Those are the prior convictions?

8            THE COURT:  Yes.

9            MR. HOAG:  I have been provided by Ms. Lasswell with

10   certified copies of all the convictions that were objected to,

11   including the wanted which was also objected to.

12           THE COURT:  All right.

13           I'm unfamiliar with this form.  In the material you

14   just handed me, which one addresses the paragraph 60?  Is that

15   the first one on the list?

16           MR. HOAG:  You want to show him?

17           THE COURT:  Good morning.

18       (The Court and the Probation Officer conferred.)

19           THE COURT:  Ms. Lasswell has supplied me with some

20   documents, certified copies.  The first is a certified copy of

21   a record showing that -- it refers to Sammy Jefferson, date of

22   birth, September 10, 1978, listing a Social Security number.

23   The last four digits are 2268.  The charge on Count I is

24   illegal possession of cocaine base.  Date of the offense was

25   July 11th, '96.  The court found Mr. Jefferson guilty on

8

1   April 21st, 1997.  Count II was illegal possession of

2   marijuana under 35 grams.  He was found guilty of the Class A

3   misdemeanor on April 21st, 1997.  I'll produce -- produce that

4   for Mr. Johnson's review where the yellow Post-it appears.

5          MR. JOHNSON:  Thank you, Your Honor.

6          THE COURT:  The next conviction relates to paragraph

7   69, general peace disturbance.  It is a certified record, a

8   certified record showing that the name of the person is Sammy

9   Jefferson.  The last four digits of the Social Security number

10  are 2268.  The charge is listed as general peace disturbance.

11  Disposition was guilty, and the sentence was 40 days in jail.

12          Would you show that to Mr. Johnson, please?

13          MR. JOHNSON:  Thank you, Your Honor.

14          THE COURT:  Thank you.  The next charge relates to

15  assaulting a person.  The record shows the name of the person

16  is Sammy Jefferson.  The last four digits of his Social

17  Security number are 2268.  Found guilty on December 11th,

18  2003.  Sentenced to serve five days in jail.

19          Mr. Douglas, would you produce that to Mr. Johnson,

20  please?

21          The final document produced relating to the warrant

22  lists the name of Mr. Sammy Jefferson.  The last four digits

23  of the Social Security number are 2268.  Subject verbally

24  admitted membership in the 14 Peabody Bloods, according to the

25  St. Louis County or St. Louis City Gang Unit, admitted that he

9

1    is a high-level member of that gang.

2            And, Ms. Lasswell, is this also the document relating

3    to the outstanding warrant?

4            PROBATION OFFICER:  Yes, it is, Your Honor.

5            THE COURT:  All right.  Thank you.

6            MR. JOHNSON:  Your Honor, in regards to this last

7    objection, I guess I would just note for the record that this

8    wanted check, I believe, was ran in October, October 12th of

9    2007.

10           THE COURT:  I believe that's right.

11           MR. JOHNSON:  Okay.  And --

12           PROBATION OFFICER:  Your Honor --

13           THE COURT:  Yes.

14           PROBATION OFFICER:  I called this morning and called

15   the St. Louis City Fugitive to verify that he was still wanted

16   on these charges, and they verified that he is, so they are

17   still active.

18           MR. JOHNSON:  Very well.  Your Honor, I just would

19   like that offer of proof made that those were as of today.

20           THE COURT:  Your response, Mr. Johnson?

21           MR. JOHNSON:  None, Your Honor, in terms of

22   presentation of the information by the probation officer.  My

23   client has viewed them, and his objections to those

24   convictions still remain; however, I concede by a

25   preponderance of what's been presented today that those

10

1   objections at this point may be moot.  I'm not sure if

2   Mr. Jefferson --

3              THE COURT:  All right.  All right.  The Court will

4   make the following findings, that proof has been offered

5   that -- as to paragraph 60, so that objection will be

6   overruled.  Paragraph 69, that objection will be overruled.

7   Paragraph 72, overruled.

8              I now want to go back to paragraph 41 and take a look

9   at the Plea Agreement which I now have.  Just a moment.

10  Where?  Can you alert me to the place?

11             MR. HOAG:  It would be -- it would be in the --

12             THE COURT:  Statement of facts?

13             MR. HOAG:  No.  Criminal history computation, Your

14  Honor.

15             THE COURT:  All right.  Would you -- Mr. Douglas,

16  would you produce that to Mr. Hoag?  I'm having trouble

17  locating the spot.

18             MR. HOAG:  If you'll look at the bottom of page 6 and

19  the top of page 7, Your Honor.

20             THE COURT:  All right.  All right.  Specifically, the

21  offense conduct on page 6 states as follows:  Chapter 2

22  specific offense characteristics.  The parties recommend that

23  the following specific offense characteristics apply.  Two

24  levels should be added pursuant to 2D1.1(b)(1) because a

25  dangerous weapon, a firearm, was possessed during the

11

1    conspiracy.  So it does appear that that is contained within

2    the stipulation signed by Mr. Jefferson.  Just a moment.  Yes,

3    it does.

4            Would you produce this to Mr. Johnson for me, please?

5            All right.  Thanks.  As to paragraph 105, that would

6    not affect the Court's determination of offense level or

7    criminal history category and have no bearing on the Court's

8    conclusions regarding sentencing.  Having said that, do you

9    care to offer any proof on paragraph 105, Mr. Hoag?

10           MR. HOAG:  105?

11           THE COURT:  That has to do with prior employment.

12           MR. HOAG:  No, I do not.

13           THE COURT:  All right.  I believe that will cover the

14   objections, am I correct?

15           MR. JOHNSON:  Yes, Your Honor.

16           THE COURT:  Okay.  Very well.  The Court adopts as

17   true the factual statements contained in the Presentence

18   Report as the Court's findings of fact, and I shall now turn

19   to making calculations under the United States Sentencing

20   Guidelines.

21           First, let me say I recognize that the United States

22   Sentencing Guidelines are advisory and not mandatory since

23   January 12th, 2005, when the United States Supreme Court

24   decided that they were in part unconstitutional; however,

25   judges are still required to make calculations under the

12

1    Guidelines and arrive at a sentencing range and to consider

2    that range along with other factors.

3         Those factors include the impact of the parties' Plea

4    Agreement on any sentencing issues.  I'll hear evidence that

5    either party cares to present and have already considered

6    evidence this morning.  I'll hear statements of respective

7    counsel and of Mr. Jefferson if he cares to make a statement.

8    I'll decide whether to impose a Guideline sentence after

9    deciding whether a departure or departures should be made

10   under the Guidelines.

11        Finally, I'll look at all the factors under 18 United

12   States Code § 3553(a) to decide whether to impose a Guideline

13   sentence or a non-Guideline sentence.  Those factors would

14   include the nature and circumstances of the offense and

15   history and characteristics of the defendant, the need for the

16   sentence imposed to reflect the seriousness of the offense, to

17   promote respect for the law, and to provide just punishment

18   for the offense, to afford adequate deterrence to criminal

19   conduct, to protect the public from further crimes of the

20   defendant, to provide the defendant with needed educational or

21   vocational training, medical care, or other correctional

22   treatment in the most effective manner, the kinds of sentences

23   available, the need to avoid sentencing disparity among

24   similarly situated defendants facing similarly situated

25   offenses and any other matter that comes before the Court that

13

1    would be relevant to sentencing issues.

2            In this case, the 2007 Guideline manual was used.

3            Oh, Ron, I have a note for you.  Thanks.

4            The 2000 edition of the manual was used.  Counts I

5    and IV are grouped together for Guideline calculation purposes

6    under 3D1.2(b).  The base offense level for violation of 21

7    United States Code § 841(a)(1) and 846 is found in 2D1.1(b) --

8    strike that -- 2D1.1(c)(3) of the manual.  The base offense

9    level for at least 15 kilograms but less than 50 kilograms of

10   cocaine is 34.  The Defendant possessed a firearm.  Two levels

11   are added under 2D1.1(b)(1).  Three levels are reduced for

12   Mr. Jefferson's full and timely acceptance of responsibility

13   under 3E1.1 (a) and (b).  The total offense level is 33.  His

14   criminal history category is VI; am I correct about that?

15           MR. HOAG:  VI.

16           THE COURT:  And the sentencing range is from 235

17   months to 293 months.  At this time -- at this time,

18   Mr. Jefferson, do you have any lawful cause or reason to

19   assign to the Court or, spoken another way, do you know of any

20   reason why I should not proceed to sentence you at this time?

21           THE DEFENDANT:  No, sir, Your Honor.

22           THE COURT:  Okay.  I'll hear first from Mr. Hoag and

23   then from Mr. Johnson and finally from you if you care to make

24   a statement.

25           MR. HOAG:  The Government requests that the Court

14

1    sentence him to a Guideline range, Your Honor.

2          THE COURT:  All right.  Mr. Johnson.

3          MR. JOHNSON:  Thank you, Your Honor.  On behalf of

4    Mr. Jefferson, first, I'd start by saying, Your Honor, I'd

5    like the Court to take note that a sentencing memorandum was

6    filed in this matter.

7          THE COURT:  Yes.  I read it.  I do have your

8    memorandum.

9          MR. JOHNSON:  Okay.  And in that memorandum, Your

10   Honor, we list some of the personal characteristics about

11   Mr. Jefferson which we believe are worth noting for the Court

12   prior to imposing a sentence.

13         THE COURT:  I do have that, and I also have some very

14   well-written letters that have been submitted on behalf of

15   Mr. Jefferson, which I have read with a lot of interest.

16         MR. JOHNSON:  Thank you, Your Honor, and in regards

17   to those letters, I'd just like it noted for the record that

18   there were, in total, 12 letters supplied to the Court in this

19   matter by Arianda Jones, a family friend; April King, a family

20   friend; the Defendant's, Mr. Jefferson's pastor and mentor,

21   Pastor Ray McGard; the Defendant's paramour, Shamika Brown;

22   the Defendant's stepdaughter, Nokia Page; the Defendant's

23   family friend, Barbara Tull; another family friend, Barbara

24   Eddings; the mothers of the Defendant's children, Natalie

25   Johnson and Amanda Conner; Kimberly Watson; a family friend,

15

1    Bobby Ingram; and a family friend, Loretta Graham, and I think

2    that's all the letters that were submitted to the Court, and

3    we'd ask that the Court take note that those letters were

4    submitted on Mr. Jefferson's behalf.

5              Your Honor --

6              THE COURT:  Do you have copies of those?

7              MR. JOHNSON:  Yes, I do, Your Honor.

8              THE COURT:  Could I see them, please?  You mentioned

9    a name or two that I don't remember seeing on my list, and I

10   want to make sure I look at all of the letters because they're

11   all very well-written and very complimentary and they do point

12   out some very important character traits of Mr. Jefferson.

13             MR. JOHNSON:  That should be all of them, Your Honor.

14             THE COURT:  All right.

15             Yes, here's one I have not seen.

16             Okay.  Sorry for the interruption.

17             MR. JOHNSON:  Thank you, Your Honor.  I appreciate

18   you taking the time to look at each one of those letters

19   individually.  Your Honor, I think the letters state something

20   that I think is indicative in a way that I can't articulate.

21   I can't remember during my time as an officer with this court

22   or in private practice that I have ever attended or

23   participated in a sentencing in which the entire gallery was

24   full for a sentencing, Your Honor.  I've been to trial

25   settings and watched, you know, motions and what have you that

16

1    are highly contested that I've seen galleries full but never

2    to a sentencing as you see today, and I think that's evident

3    of Mr. Jefferson's character.  He is a lot of things to a lot

4    of people, and I think that's evident as you look out into the

5    pews today, Your Honor, and I think that that's worth noting.

6          Mr. Jefferson is a father.  He is a son.  He is a

7    loving brother.  He is a colleague, and I believe that those

8    letters articulate or shed some light on the effect that he's

9    had on other individuals during his life.  What's also noted

10   in some of the letters, Your Honor, is that Mr. Jefferson

11   works with kids, that he's in the Boys' -- he's active in the

12   Boys' Club here in the greater St. Louis area and that he has

13   tried to do in his life good.

14         While there are things that are indicated in the

15   Presentence Report and that this Court very well knows from

16   his prior conduct that may lead people to believe or infer

17   otherwise from him, I think that it is worth noting, Your

18   Honor, that while I have seen many individuals situated with a

19   criminal history category score as high as Mr. Jefferson, I

20   can't say I've seen any of those individuals in court with as

21   many family, friends, and members of the community who are

22   standing in support of him, and I just think that that's worth

23   noting, Your Honor, in terms of allocution.

24         I'd ask the Court to take judicial notice of the

25   sentencing memorandum filed.

17

1       Your Honor, we'd request that should Mr. Jefferson be

2  placed in the Bureau of Prisons, that he be placed in a

3  location as close as possible to the St. Louis area, that he

4  be screened for any residential drug treatment programs that

5  may be applicable to him or for him, and that he be allowed to

6  get additional vocational educational skills.

7       It's my understanding from Mr. Jefferson that during

8  a previous term he had already acquired his GED; however, Your

9  Honor, I don't see any downfall in requesting that

10 Mr. Jefferson, if he be deemed able, be able to apply for and

11 receive any other vocational training that the BOP might have,

12 and he's requested that I ask that the Court do so.

13      Your Honor, you -- this Court stands in a very

14 similarly -- in a very unique situation in that you've

15 previously sentenced Mr. Jefferson for another matter, and so

16 I think that you have an idea or a grasp of his background,

17 where he's from, and what his life has been involved with.

18 What I can say, Your Honor, to that effect is that through all

19 of my contact and conduct with Mr. Jefferson, he has been

20 remorseful for the things which he has done, the betrayal that

21 his conduct has caused with the family, the fact that he is

22 before this Court again today for another very serious

23 offense, and that he is remorseful for that.

24      Mr. Jefferson is prepared to make a statement to the

25 Court to that effect.  I'd ask that the Court allow him to do

18

1    so and consider it for its allocution purposes as well and

2    that the Court, in its wisdom, sentence Mr. Jefferson to as

3    low a range as possible, taking into account all of the

4    factors set forth in United States Code 18 § 3553.

5            Thank you, Your Honor.

6            THE COURT:  All right.  Before I hear from you,

7    Mr. Jefferson, I'd like to comment on a few things that are so

8    apparent to me.  I believed when I saw you before and I

9    continue to believe that you should be in business school.

10   You should be a CEO of a company instead of where you are with

11   your skills, your intelligence.  All of the things that

12   Mr. Johnson said about you are correct in terms of your

13   character skills, and I do note with considerable interest the

14   issues that you had as a young person.  I note that you had a

15   brother who was murdered.

16           I note that, in unusual fashion, you have supported

17   your children, which I don't see that a lot.  I frequently see

18   cases where a person has children, and I note underneath each

19   time if there's a child support arrearage, and generally,

20   there are always arrearages, and you have none, which I credit

21   to you.

22           You have skills for employment, and I say all these

23   things because I'm going to be sentencing you in a few minutes

24   to a very long prison sentence, and it just seems like an

25   incredible waste of humanity that that has to happen.  I

19

1   regret that it has to happen.  I always look in these cases

2   for some hope for -- mostly for the people who are here with

3   you because, as Mr. Johnson pointed out, I don't ever remember

4   seeing this many people in support of anyone.  Usually, I look

5   out and I don't see anyone here, and today, there aren't any

6   empty seats.  That really quite remarkable.

7        It tells me a lot about you as a person, and the

8   letters are very well-written.  They ask for mercy, and under

9   the sentencing regimen in federal court, people frequently

10  leave here thinking that judges are unmerciful because they

11  really aren't given a lot of choices in sentencing in many

12  cases, and that's the case here.  So I hope the people who

13  leave here do not look upon the Court as being without mercy.

14  It's just the nature of the charge, the nature of the prior

15  history, and all of those factors indicate what has to be the

16  sentence.

17       Having said those things, I'd like to hear anything

18  you want to say.

19       THE DEFENDANT:  First, Your Honor, I'd like to

20  apologize to my family and the courts for my actions in the

21  streets, you know, my kids, my fiancée, my mother.  I made

22  some wrong decisions in life.  I started getting in trouble at

23  an early age.  You know, I knew better.  You know, I tried to

24  find the easy way out.  This wasn't the easy way out for me.

25  It only hurt me.  It's hurting my family.

20

1    THE COURT:  Take your time.  Take your time.  Don't
2    hurry.  Take whatever time you need because there are a lot of
3    people who are crying right along with you.
4    THE DEFENDANT:  Your Honor, I ask that the Court have
5    mercy on my sentence today and allow me another chance in
6    society, you know, to be a better and productive father, son,
7    husband, and friend.  You know, I got myself in this
8    situation.  I take full responsibility for it.  You know, I'm
9    not going to bring nobody else into my situation or point the
10   finger at nobody because Sammy Jefferson chose this life.  I
11   just ask that the courts have mercy on me.
12   THE COURT:  Okay.  Well, one of the first things I'm
13   going to do is to insist of you that during this time of your
14   life where you're going to be prevented from being with your
15   family and friends that you take advantage of every college
16   class, technical class, every other kind of educational class
17   that's available.  Because of your intelligence, it would be a
18   further waste of time for everybody if you failed to do that,
19   so I'm going to impose that as a condition of your
20   incarceration.
21       Because this is a case involving a very large
22   conspiracy, a very large amount of drugs, at least 15
23   kilograms, which would convert into something over 40 pounds
24   of cocaine, there are certain limitations that I have
25   regarding sentencing.

21

1      Would you get the book?  My copy that I have with me

2  doesn't have the recommendation on the back.  Ms. Lasswell

3  will have one.

4      Thank you.

5      In light of the advisory range and the provisions of

6  18 United States Code § 3553(a), based on the serious nature

7  of the instant offense involving a conspiracy to distribute

8  and possess with the intent to distribute cocaine and

9  marijuana in which the Defendant is accountable for more than

10  15 kilograms but less than 50 kilograms of cocaine and in

11  consideration of his criminal history and the fact that he was

12  serving a term of supervised release for the federal

13  conviction for felon in possession of a firearm at the time of

14  the instant offense, the Court has considered all of the

15  factors of 18 United States Code.  I've taken into account the

16  circumstances of the offense.  It is a very serious offense

17  involving a great amount of cocaine.  I've considered all of

18  the characteristics of Mr. Jefferson.  I have these letters,

19  and I hope you get a chance, if you have it, to see them.

20  They are remarkable for you.  I have to impose a sentence that

21  reflects the seriousness of the offense -- it is a serious

22  offense -- to promote respect for the law and to provide just

23  punishment for the offense.  It is important to afford

24  adequate deterrence to criminal conduct, to protect the public

25  from further crimes of the Defendant, and it also will be a

22

1   sentence that will provide Mr. Jefferson with needed

2   educational and vocational training.

3           Under the Sentencing Reform Act of 1984, it is the

4   Judgment of the Court that Mr. Jefferson be and hereby is

5   committed to the custody of the Bureau of Prisons to the

6   lowest end of the Guideline range, which is 235 months'

7   imprisonment.

8           It shall run -- I am -- I believe that no useful

9   purpose would be served by making the sentence run

10  consecutively to the sentence I'm issuing today.  There may be

11  some criticism of that because it appears that there is no

12  punishment for the prior offense; however, because of the

13  nature of the very severe sentence that must be imposed, I'm

14  making that sentence run concurrently in case

15  4:03-CR-0049-ERW.

16          While in the Bureau of Prisons, it is recommended

17  that Mr. Jefferson be evaluated for participation in the

18  Residential Drug Abuse Program if that is consistent with

19  Bureau of Prisons policies.  For the record, it indicates that

20  Mr. Jefferson began using marijuana at the age of 15.

21          Upon release from imprisonment, he shall be placed on

22  supervised release for a term of five years.  This term

23  consists of terms of five years on each of Counts I and IV,

24  all of the terms to be run concurrently.

25          Within 72 hours of release from the custody of the

23

1 Bureau of Prisons, he shall report in person to the Probation

2 Office in the district to which he is released.

3     While on supervision, he shall comply with the

4 standard conditions that have been adopted by this Court and

5 shall comply with the following additional conditions:

6     He shall refrain from any unlawful use of a

7 controlled substance and submit to a drug test within 15 days

8 of the beginning of supervision and at least two periodic drug

9 tests thereafter for use of a controlled substance.

10     He shall participate in a drug or alcohol abuse

11 treatment program approved by the United States Probation

12 Office, which may include substance abuse testing, counseling,

13 residence in a community corrections center, residence in a

14 comprehensive sanctions center, residential reentry center, or

15 inpatient treatment in a treatment center or hospital.  He

16 shall pay the costs associated with substance abuse services

17 based on a copayment fee established by the United States

18 Probation Office.  Copayments shall never exceed the total

19 cost of services provided.

20     He shall submit his person, residence, office,

21 vehicle or vehicles to a search or searches conducted by the

22 United States Probation Office at reasonable times and in a

23 reasonable manner based upon reasonable suspicion of

24 contraband or evidence of a violation of a condition of

25 release.  Failure to submit to a search may be grounds for

24

1    revocation.  He shall warn any other residents that the

2    premises may be subject to searches under this condition.

3             He has no ability to pay a fine.  No fine is imposed.

4    He must pay the special assessment of $200, which is due and

5    payable immediately.

6             Any notice of appeal that you have a right to file

7    must be filed within 10 days of this date.  If you're unable

8    to pay the cost of an appeal, you may apply for leave to

9    appeal in forma pauperis, and the Clerk of the Court shall

10   assist you with those filings.

11            Counts II, VIII, and IX are dismissed, correct,

12   Mr. Hoag?

13            MR. HOAG:  Yes, Your Honor, that's correct.

14            THE COURT:  I'm recommending that, first,

15   Mr. Jefferson be given the benefit of all college education

16   classes and any vocational training available through the

17   Bureau of Prisons, that he be placed as close to St. Louis as

18   possible, that he receive the 500-hour special drug treatment

19   program.

20            Are there any other recommendations?

21            MR. JOHNSON:  No, Your Honor.  Thank you.

22            THE COURT:  All right.

23            MR. HOAG:  Thank you, Your Honor.

24        (Proceedings concluded at 9:50 a.m.)

25

25

<u>CERTIFICATE</u>

I, Gayle D. Madden, Registered Diplomate Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 24 inclusive.

Dated at St. Louis, Missouri, this 27th day of February, 2008.

_____

/s/ Gayle D. Madden

GAYLE D. MADDEN, CSR, RDR, CRR

Official Court Reporter